UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM D. JOKI,
        Plaintiff,

Case No. 2:14-cv-22

v.                                          HON. R. ALLAN EDGAR

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.
_____/

**OPINION**

        Plaintiff William D. Joki applied for Social Security Disability Insurance benefits on September 17, 2010, and for supplemental security income on September 20, 2010. Plaintiff claimed benefits for a disability he alleges began on November 15, 2007. On February 24, 2011, the Social Security Administration denied both applications. Plaintiff then filed a written request for a hearing by an Administrative Law Judge (ALJ). ALJ Timothy J. Malloy presided over the hearing on July 25, 2012. Plaintiff was represented by attorney David Hankus. Plaintiff and impartial vocational expert Jane E. Carmichael testified at the hearing. On September 6, 2012, ALJ Malloy issued a written decision finding that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. Plaintiff seeks review of ALJ Malloy's decision.

        This Court's review of a denial of disability benefits by the Commissioner is limited. The Court must determine whether the appropriate legal standard was applied and whether there is substantial evidence to support the denial. *See Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1980). Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). This Court does not review the record de novo and must uphold the decision of the Commissioner as long as it is supported by substantial evidence. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

        In denying a request for benefits, the Commissioner is required to follow a sequential evaluation. First, the Commissioner must determine whether or not the plaintiff is engaged in substantial gainful activity. If so, the request for benefits is denied. Second, if the plaintiff is not engaged in substantial gainful activity, the Commissioner must then determine whether or not the plaintiff has a severe impairment. If the plaintiff does not have a severe impairment the request

for benefits is denied. Third, the Commissioner must then determine whether plaintiff's severe impairment(s) meets or exceeds impairments in the Listings of Impairments. If the plaintiff's impairment does not meet the criteria of a listed impairment, the Commissioner must then assess the plaintiff's residual functional capacity, which looks at plaintiff's physical and mental work abilities despite his limitations. Fourth, the Commissioner determines whether, based on the plaintiff's residual functional capacity, he can perform his past relevant work. If he is able to perform past relevant work he is not disabled. Fifth, if plaintiff is unable to perform past relevant work, the Commissioner must determine whether the claimant can perform other work existing in significant numbers in the national economy, taking into account plaintiff's residual functional capacity, age, education, and work experience. If the plaintiff can perform other work existing in significant numbers, he is not disabled. Plaintiff bears the burden of proof for all medical conditions and capacity, while the Commissioner bears the burden of demonstrating that other work exists in significant numbers in the national economy that plaintiff is capable of performing.

The Commissioner found that plaintiff: 1) was not engaged in substantial gainful activity since November 15, 2007; 2) has severe impairments, including degenerative disc disease, chronic pain syndrome, meningioma, migraine headaches, and a depressive disorder; 3) does not have an impairment that meets or exceeds an impairment in the Listings of Impairments and has the residual functional capacity to perform light work as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), with some exceptions; 4) is unable to perform past relevant work; and 5) can perform other work that it exists in significant numbers in the national economy. (Docket #6-3)

Plaintiff argues that substantial evidence does not support the residual capacity finding regarding his back pain and that the ALJ should have ordered a consultative medical examination. (Docket #11) The ALJ conducted a residual capacity finding and found that Plaintiff could perform "light work," which involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). This determination included the following limitations: "no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; frequent balancing, crouching, kneeling, and crawling; occasional stooping; avoidance of concentrated exposure to the use of moving machinery and working at unprotected heights." (Docket #6-3, 4). Plaintiff's

2

light work was further limited to "unskilled work involving simple, routine, and repetitive tasks that allow an individual to be off task more than 5% of the workday; and a low stress job setting (e.g., occasional changes in the job setting, occasional decision-making, and no fast-pace line/production work)." (*Id.* at 10)

The ALJ provided seven written pages to support his finding. With regard to the back pain, the ALJ concluded that medical evidence supported Plaintiff's claim of chronic low back pain and other conditions but that his pain was mild, controlled by medication, and only caused mild limitations. The ALJ summarized a long list of medical examinations performed by Plaintiff's treating physicians between November 2007 and June 12, 2012. A small sample of these summaries is provided below:

> On December 6, 2007, the claimant underwent a physical examination complaining of low back pain and was assessed as having the same and was given strong pain-killing medication after he signed a controlled substance usage agreement.
>
> On January 28, 2008, the claimant underwent an examination complaining of back pain and stated that he was doing some tilling work for a friend to earn a little money and that kneeling on a floor has been hard on him. On the immediately aforementioned date he was assessed as having chronic back pain, hypertension, and anxiety.
>
> On August 30, 2009, the claimant was treated in a hospital emergency room for exacerbation of chronic back pain and upon physical examination he was found to have been in no acute distress and to have had no sensory deficit, equal and active deep tendon reflexes, positive straight leg raising bilaterally, and slow maneuverability.
>
> [o]n February 8, 2010, the claimant stated that his pain was reasonably controlled with medication and he was assessed as having chronic pain syndrome without evidence of abnormality noted upon a physical examination.
>
> On February 23, 2011, a reviewing physician from the State Agency assessed the claimant as being able to perform a wide range of light unskilled work and said assessment was based on the diagnosed conditions of a spinal disorder, a benign brain tumor, and an affective disorder that had resulted in mild to moderate functional limitations.
>
> On August 15, 2011, the claimant was treated in a hospital emergency room for back pain, and upon examination on October 12, 2011, the claimant was assessed as having greatly improved depression, well-controlled hypertension, and back pain under good control with a physical examinations at that time showing only low back tenderness.

> On June 12, 2012, the claimant underwent a neurologic examination and was found to have had normal mental status, giveaway weakness secondary to pain involving the proximal left upper extremity, no sensory abnormality, equal and active deep tendon reflexes involving the upper and lower extremities, normal coordination, and a normal gait.

(*Id.* at 5–10). Many of these treating physicians were different doctors and were not appointed by the Commissioner. The ALJ gave credence to their medical reports, with a conclusion that Plaintiff had a long and consistent pattern of being "without evidence of motor abnormality, sensory abnormality, reflex abnormality, persistent muscle spasm, abnormality of gait, or muscle atrophy upon physical examination, or anything more than a minimal degenerative disc disease upon x-ray examination." (*Id*. at 10)

Plaintiff also had a history of performing light work, including work as a card dealer. Plaintiff's medical reports also indicate that he laid kitchen tile, went hunting, and camped. Although Plaintiff does have pain when taking part in these activities, he is not prevented from doing them. At the hearing, Plaintiff also acknowledged that he can sit "from 20 minutes to a half-hour" and stand in "one place, maybe 15 to 20 minutes." (Docket #6-2, 19) These activities support the finding that Plaintiff can perform light modified work.

In response, Plaintiff argues that he was not given a fair hearing because he has a neural stimulator to help manage his back pain. However, the ALJ, in both the oral hearing and in the written opinion acknowledged that Plaintiff has a spinal stimulator that does not provide complete relief and was fully aware that Plaintiff lacked sufficient financial resources to have it properly adjusted. (*Id.* at 11–12; Docket #6-3, 11) Plaintiff's claims that his worsening condition goes undocumented because the neural stimulator prevents an MRI is unsupported by the numerous x-rays, tests, and evaluations performed by medical personnel that do not support a worsening condition. The ALJ also noted that Plaintiff failed urine analysis screening (which included a positive test for marijuana) and was not taking his pain medication, which could control his pain. These issues further exacerbate the problem because some of the doctors stopped providing Plaintiff with narcotic drugs. Finally, the ALJ "found the claimant's allegations generally (but not fully) credible." (Docket #6-3, 11). Having reviewed the ALJ's decision, this Court concludes that there is substantial evidence to support a residual capacity finding that Plaintiff can perform modified light work.

Second, Plaintiff argues that he should have been sent for a consultative examination. Although it is within the discretionary power of an ALJ to order a consultative examination, it is

4

not required and *may* be ordered when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." 20 C.F.R. § 404.1519a; *see also Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001). There was sufficient testimony and medical evidence for the ALJ to evaluate Plaintiff's residual functional capacity. Additionally, the ALJ did not have a special duty to develop the record because Plaintiff was represented by counsel. *See Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986).

Although the Plaintiff does not challenge the finding that other work exists in significant numbers in the national economy that he is capable of performing, this Court notes that the ALJ supported this determination through evidence provided by a non-partial vocational expert:

> The vocational expert testified that given all of these factors [claimant's age, education, work experience, and residual functional capacity] the individual would be able to perform the requirements of representative occupations such as cleaner (approximately 13,000 jobs in the State of Michigan performed at a light exertional level), inspector/tester (approximately 20,000 jobs in the State of Michigan performed at a light exertional level), hand packager (approximately 5000 jobs in the State of Michigan performed at a light exertional level), inspector (approximately 3000 jobs in the State of Michigan performed at a sedentary exertional level), assembler (approximately 6000 jobs in the State of Michigan performed at a sedentary exertional level), and security system monitor (approximately 3500 jobs in the State of Michigan performed at a sedentary exertional level).

(Docket #6-3, 12–13.) Accordingly, there was substantial evidence to support the ALJ's finding that other work exists in significant numbers in Michigan that Plaintiff is capable of performing.

Because the Commissioner's decision is supported by substantial evidence, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED**. A judgment consistent with this opinion will be entered.

SO ORDERED.

Dated:       1/23/2015                                /s/ R. Allan Edgar
                                                      R. Allan Edgar
                                                      United States District Court Judge

5